HALEY AMANDA LAIL, A MINOR BY AND THROUGH HER GUARDIAN AD LITEM, LISA CAROL
JESTES, AND LISA CAROL JESTES, INDIVIDUALLY, PLAINTIFF v. CLEVELAND
COUNTY BOARD OF EDUCATION AND LEIGH BELL, DEFENDANTS

No. COA06-1244

(Filed 5 June 2007)

**1. Appeal and Error— appealability—sovereign immunity— substantial right**

Defendant school board could immediately appeal the denials of a motion to dismiss and for summary judgment in an action arising from a high school cheerleader falling during practice. The board's answer raised governmental immunity, which affects a substantial right.

**2. Judgments— clerical error—correction**

An order was remanded for correction of a clerical or ministerial error where the parties agreed that the court inadvertently stated the point at which immunity began to be waived as $100,000 rather than $150,000.

**3. Insurance— ambiguous language—school policy—exclusions—injured cheerleader**

The trial court correctly denied in part a school board's motion to dismiss and for summary judgment in an action arising from an injury suffered by a cheerleader during practice where there were two insurance contracts involved that contained inconsistent, conflicting and ambiguous language regarding exclusions.

Appeal by defendant Cleveland County Board of Education from order entered 16 June 2006 by Judge Beverly T. Beal in Cleveland County Superior Court. Heard in the Court of Appeals 8 May 2007.

*Mark L. Simpson, for plaintiffs-appellees.*

*Tharrington Smith, L.L.P., by Kenneth A. Soo and Neal A. Ramee, for defendant-appellant.*

*No brief filed for defendant-appellee Leigh Bell.*

TYSON, Judge.

Cleveland County Board of Education ("the Board") appeals from order denying in part its motion to dismiss and for summary judgment

in favor of Haley Amanda Lail ("Lail") and Lisa Carol Jestes, as guardian *ad litem* and individually (collectively, "plaintiffs"). We affirm and remand for correction of clerical error.

## I. Background

Lail was a high school student and a member of the King's Mountain High School varsity cheerleading squad. On 16 January 2006, plaintiffs filed a complaint in Cleveland County Superior Court against the Board and Leigh Bell ("defendant Bell") alleging Lail was injured while participating in cheerleading practice. The complaint alleged Lail arrived at King's Mountain High School gymnasium for cheerleading practice at 2:00 p.m. on 11 November 2003. Defendant Bell, the head cheerleading coach at King's Mountain High School, was not present to supervise varsity cheerleading practice on that date. Defendant Bell had appointed a Gardner-Webb University student ("Gardner-Webb student") to direct cheerleading practice.

The Gardner-Webb student directed the cheerleaders, including Lail, to perform a "He Man" cheerleading stunt. Lail was elevated by the other cheerleaders and placed her feet in the hands of a "main base cheerleader." As the "main base cheerleader" held Lail's feet at shoulder level, Lail lost her balance and fell backwards. She struck her head on the floor and was knocked unconscious, fracturing her skull.

Plaintiffs allege that after Lail fell, she was lifted off the floor at the direction of the Gardner-Webb student, and placed on the bleachers. Plaintiffs allege Lail remained unconscious on the bleachers for almost an hour while the cheerleaders continued practice, and no employee or agent of the Board contacted Lail's parents, requested emergency medical service, or rendered any care. Plaintiffs further allege that several large floor mats, available for use during cheerleading practice, were stored in an adjoining room and were not used during this practice. Plaintiffs sought to recover money damages based on the Board's and defendant Bell's negligence for Lail's injuries.

On 28 March 2006, the Board moved to dismiss and for summary judgment alleging governmental immunity. Attached to its motion was: (1) the Affidavit of Edwin Dunlap, Jr., Treasurer of the North Carolina School Boards Trust ("NCSBT"); (2) a copy of the NCSBT Trust Fund Coverage Agreement ("the Coverage Agreement"); and (3) an excess liability insurance agreement ("the Excess Policy") secured

by NCSBT from a private insurance carrier. The Board's motion alleged the Board had not waived its sovereign immunity for damages and the excess insurance did not cover claims for bodily injury made by a student athlete or cheerleader in connection with any interscholastic or cheerleading activity.

The Board's motion was heard before the Cleveland County Superior Court on 24 April 2006. On 12 June 2006, the trial court denied in part and granted in part the Board's motion. The trial court determined that the Board "ha[d] not waived its sovereign immunity as to liability for claims less than $100,000," but "ha[d] waived its immunity to the extent that its coverage is in excess of $100,000 and less than $1,000,000." The Board appeals.

## II. Issue

The Board argues the trial court erred in denying in part its motion to dismiss and for summary judgment and ruling it had waived its governmental immunity with respect to plaintiffs' claims in excess of the limits of the Coverage Agreement, but less than $1,000,000.00.

## III. Interlocutory Appeal

[1] An appeal from the denial of a motion to dismiss or summary judgment is interlocutory. *Thompson v. Norfolk S. Ry. Co.*, 140 N.C. App. 115, 121, 535 S.E.2d 397, 401 (2000); *In re Estate of Redding v. Welborn*, 170 N.C. App. 324, 328-29, 612 S.E.2d 664, 667-68 (2005).

> Generally, there is no right of immediate appeal from interlocutory orders and judgments. The North Carolina General Statutes set out the exceptions under which interlocutory orders are immediately appealable . . . N.C.G.S. § 1-277(a) provides: "an appeal may be taken from every judicial order or determination of a judge of a superior or district court, upon or involving a matter of law or legal inference, whether made in or out of session, which affects a substantial right claimed in any action or proceeding."

*Goldston v. American Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). "[T]his Court has repeatedly held that appeals raising issues of governmental or sovereign immunity affect a substantial right sufficient to warrant immediate appellate review." *Price v. Davis*, 132 N.C. App. 556, 558-59, 512 S.E.2d 783, 785 (1999) (citations omitted). We recognize the non-prevailing party's right to immediate review because " 'the essence of absolute immunity is its possessor's

entitlement not to have to answer for his conduct in a civil damages action.'" *Id.* (quoting *Epps v. Duke University, Inc.*, 122 N.C. App. 198, 201, 468 S.E.2d 846, 849, *disc. rev. denied*, 344 N.C. 436, 476 S.E.2d 115 (1996) (citing *Herndon v. Barrett*, 101 N.C. App. 636, 639, 400 S.E.2d 767, 769 (1991))). The Board's answer and arguments assert the affirmative defense of governmental immunity. This appeal is properly before this Court. *Id.*

## IV. Standard of Review

### A. Motion to Dismiss

Our standard of review of an order denying a motion to dismiss is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). In ruling upon such a motion, the complaint is to be liberally construed, and the court should not dismiss the complaint unless it appears beyond doubt that [the] plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987).

### B. Summary Judgment

Our standard to review the grant of a motion for summary judgment is whether any genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 705, 707-08, 582 S.E.2d 343, 345 (2003), *aff'd per curiam*, 358 N.C. 137, 591 S.E.2d 520 (2004) (citing *Willis v. Town of Beaufort*, 143 N.C. App. 106, 108, 544 S.E.2d 600, 603, *disc. rev. denied*, 354 N.C. 371, 555 S.E.2d 280 (2001)); *see* N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005).

> A defendant may show entitlement to summary judgment by "(1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense."

*Id.* at 708, 582 S.E.2d at 345 (quoting *James v. Clark*, 118 N.C. App. 178, 181, 454 S.E.2d 826, 828, *disc. rev. denied*, 340 N.C. 359, 458 S.E.2d 187 (1995)). " 'Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts,

as opposed to allegations, showing that he can at least establish a prima facie case at trial.' " *Id.* at 708, 582 S.E.2d at 345 (quoting *Gaunt v. Pittaway*, 139 N.C. App. 778, 784-85, 534 S.E.2d 660, 664, *disc. rev. denied*, 353 N.C. 262, 546 S.E.2d 401 (2000), *cert. denied*, 353 N.C. 371, 547 S.E.2d 810 (2001)).

### V. Ministerial Error

**[2]** Before addressing the Board's argument, we note the trial court's order states that the Board has not waived governmental immunity for claims up to $100,000.00 and has waived governmental immunity for claims in excess of $100,000.00. The parties agree the trial court made an inadvertent ministerial or clerical error and the "$100,000" in the order should read "$150,000." We remand the order to the trial court for this correction.

### VI. The Board's Waiver of Governmental Immunity

The Board argues the trial court erred in denying in part its motion to dismiss and for summary judgment and asserts it has not waived its governmental immunity with respect to plaintiffs' claims above the limits of the Coverage Agreement.

### A. Governmental Immunity Generally

**[3]** "As a general rule, the doctrine of governmental, or sovereign immunity bars actions against, *inter alia*, the state, its counties, and its public officials sued in their official capacity." *Herring v. Winston-Salem/Forsyth County Bd. of Educ.*, 137 N.C. App. 680, 683, 529 S.E.2d 458, 461, *disc rev. denied*, 352 N.C. 673, 545 S.E.2d 423 (2000). "A county or city board of education is a governmental agency, and therefore may not be liable in a tort action except insofar as it has duly waived its immunity from tort liability pursuant to statutory authority." *Overcash v. Statesville City Bd. of Educ.*, 83 N.C. App. 21, 22-23, 348 S.E.2d 524, 526 (1986) (citations omitted).

N.C. Gen. Stat. § 115C-42 (2005) provides that a board of education may waive its governmental immunity by securing liability insurance and states:

> Any local board of education, by securing liability insurance as hereinafter provided, is hereby authorized and empowered to waive its governmental immunity from liability for damage by reason of death or injury to person or property caused by the negligence or tort of any agent or employee of such board of education when acting within the scope of his authority or within the

course of his employment. *Such immunity shall be deemed to have been waived by the act of obtaining such insurance, but such immunity is waived only to the extent that said board of education is indemnified by insurance for such negligence or tort.*

(Emphasis supplied).

## B. NCSBT Coverage Agreement

Here, the Board was a member of the NCSBT Risk Management Program. The Coverage Agreement entered into by the Board provides:

The North Carolina School Boards Trust ("NCSBT") provides local boards of education the opportunity to budget funds for the purpose of paying all or part of a Claim made or any civil judgment entered against any of its members or employees or former members or employees, when such Claim is made or such judgment is rendered as Damages on account of any act done or omission made, or any act allegedly done or omission allegedly made, in the scope of their duties as members of the local board of education or as employees.

The Coverage Agreement specifically states that "it is not a contract for insurance."

The Coverage Agreement covers acts or omissions occurring in November 2003 when Lail alleges she was injured. The fund limit under the Coverage Agreement is $150,000.00 for each claim made and $600,000.00 aggregate for the coverage period. Exclusion numbered 9, the "Cheerleader Exclusion," of the Coverage Agreement excludes coverage for:

. . . any Claim made by a student athlete *or cheerleader* arising out of or in connection with any interscholastic athletic activity or *any cheerleading activity,* including athletic or cheerleading tryouts, *practices, or participation.* Provided, however, the General Liability coverage afforded by the Fund (but not the coverage afforded by Excess Insurance, if any) does apply to such Claims in excess of and after the payment of the full limit of all insurance benefits afforded student athletes and *cheerleaders* as a result of the school's membership or participation in any scholastic/athletic program including, but not limited to, the school's membership in the North Carolina High School Athletic

Association (NCHSSA), subject to the Fund Limits as set forth in the Declarations. *The Excess Insurance (if any) does not provide coverage in any amount for Claims to which this exclusion applies.*

(Emphasis supplied).

The Coverage Agreement defines "Excess Insurance" as "coverage, if any, purchased by NCSBT for a Member school district that provides coverage above the Fund Limits as shown in the Declaration." The Coverage Agreement contains a clause entitled "Terms of Excess Insurance," which reads:

Excess Insurance (if any), over and above the coverage provided by the Fund, will be in addition to the Fund Limits of coverage defined herein and *contains limits, exclusions, provisions, terms and/or conditions which vary from those provided by the Fund.* The Excess Insurance (if any) is the sole responsibility of the Excess Insurer, and the Fund shall not be responsible for the payment of any amounts in excess of the Fund Limits shown in the Declarations under any circumstances. The Fund shall not be liable for any failure on the part of the Excess Insurer to make payment under the terms of the Excess Insurance.

(Emphasis supplied).

### C.  Excess Insurance Policy

NCSBT purchased the Excess Policy from Folksamerica Reinsurance Company. The Excess Policy applies to "bodily injury and/or property damage liability other than automobile" claims above the $150,000.00 NCBST fund limits up to $850,000.00 and contains a coverage limit of $1,000,000.00. An endorsement to the Excess Policy states it "does not apply to claims to which exclusion 12 of the company's coverage agreement applies, including but not limited to claims alleging negligent hiring, negligent retention and/or negligent supervision." This is the only exclusion specifically referenced in the endorsement to the Excess Policy which refers to specific exclusions contained in the Coverage Agreement.

### D.  Analysis

Pursuant to N.C. Gen. Stat. § 115C-42, a school board can only waive its governmental immunity where it procures insurance through a company or corporation licensed and authorized to issue

insurance in this State or a qualified insurer as determined by the Department of Insurance. *Lucas v. Swain County Bd. of Educ.*, 154 N.C. App. 357, 361, 573 S.E.2d 538, 541 (2002). In *Lucas*, this Court held that the NCBST agreement did not meet either of these two criterion and the school board's participation in the trust did not waive the school board's governmental immunity. 154 N.C. App. at 363, 573 S.E.2d at 542; *see Willet v. Chatham Co. Bd. of Educ.*, 176 N.C. App. 268, 269, 625 S.E.2d 900, 901-02 (2006). Here, the trial court properly ruled the Board had not waived its governmental immunity up to the fund limit by participating in the Coverage Agreement entered into between NCBST and the Board. *Id.*

A school board waives its governmental immunity when it procures excess liability insurance coverage through the trust from a licensed commercial insurance carrier. *Id.* at 361, 573 S.E.2d at 541. In Endorsement numbered 5 of the Excess Policy, the Board is specifically named as a covered member. In *Lucas*, the school board procured excess insurance coverage through NCBST up to $1,000,000.00. 154 N.C. App. at 359, 573 S.E.2d at 539. This Court stated the school board's action "in contracting with the Trust, which then contracted with a commercial insurer to provide excess coverage to defendant, constitutes a waiver of [the school board's] immunity under G.S. § 115C-42 to the extent of that coverage." *Id.* at 365, 573 S.E.2d at 543. We concluded the school board had waived its immunity for claims between $ 100,000.00, the fund limit of the trust at that time, and $1,000,000.00 by procuring coverage from a commercial insurer for that amount. *Id.* When a school board waives its governmental immunity by securing excess insurance, such immunity is waived only to the extent that said board of education is covered by the insurance policy. N.C. Gen. Stat. § 115C-42; *see Ripellino v. North Carolina School Boards Ass'n, Inc.*, 158 N.C. App. 423, 581 S.E.2d 88 (2003) ("To the extent the excess insurance policy provides coverage, the Board waived immunity."), *disc. rev. and cert. denied*, 358 N.C. 156, 592 S.E.2d 694 (2004).

## E. Coverage and Exclusions

The Board is named as a covered member in Endorsement numbered 5 of the Excess Policy. The trial court properly held the Board had waived governmental immunity for claims exceeding $150,000.00, the limits of the trust, and under $1,000,000.00 by procuring the Excess Policy to the extent the Excess Policy provides liability coverage to the Board.

The question becomes whether Lail's claims for bodily injury are covered by or excluded from the Excess Policy. The Board argues the Excess Policy expressly incorporates all exclusions contained in the Coverage Agreement, which specifically excludes coverage for injuries sustained in connection with cheerleading activities.

The Excess Policy does not specifically state whether all of the exclusions contained in the Coverage Agreement equally apply in the identical manner to the Excess Policy. The Board relies upon the language of the Excess Policy in Paragraph numbered 1 under the Conditions that states, "The liability of the Reinsurer . . . shall follow that of [NCSBT] and shall be subject in all respects to the terms and conditions of [NCSBT's] policy(ies) except when otherwise specifically provided herein[.]"

However, the Coverage Agreement also contains a provision entitled, "Terms of Excess Insurance," which states, "Excess Insurance (if any), over and above the coverage provided by the Fund, *will be in addition to* the Fund Limits of coverage defined herein *and contains limits, exclusions, provisions, terms and/or conditions which vary from those provided by the Fund.*" (Emphasis supplied).

Plaintiffs argue no endorsement to the Excess Policy expressly excluded coverage for activities described in Exclusion numbered 9 of the Coverage Agreement. The Board argues this Court is required to read the Coverage Agreement and Excess Policy together *in pari materia*, find the cheerleading exclusion contained in the Coverage Agreement applies to the Excess Policy, and reverse the trial court's ruling. The two contracts contain inconsistent language. While the Excess Policy states the liability of the excess carrier shall follow that of the Coverage Agreement, the Coverage Agreement states the Excess Policy contains exclusions and provisions which vary from those provided in the Coverage Agreement. The endorsement to the Excess Policy only expressly excludes coverage for claims to which Exclusion numbered 12 of the Coverage Agreement applies.

Our Supreme Court has set forth the rules under which these agreements are to be construed. "[P]rovisions which exclude liability of insurance companies are not favored and therefore *all ambiguous provisions will be construed against the insurer* . . . ." *State Capital Ins. Co. v. Nationwide Mutual Ins. Co.*, 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986) (emphasis supplied) (citing *Trust Co. v. Insurance Co.*, 276 N.C. 348, 355, 172 S.E.2d 518, 522-23 (1970)). Exclusions con-

LAIL v. CLEVELAND CTY. BD. OF EDUC.

[183 N.C. App. 554 (2007)]

tained in insurance contracts are construed strictly to provide coverage. *Trust Co.*, 276 N.C. at 355, 172 S.E.2d at 522-23.

We cannot hold as a matter of law that the Excess Policy incorporates all exclusions of the Coverage Agreement, including the Cheerleading Exclusion contained in Exclusion numbered 9 of the Coverage Agreement. In accordance with the fundamental cannons of insurance contract construction, we construe the language in the agreements against the insurer and strictly construe the exclusion to provide coverage. *Id.*; *State Capital Ins. Co.*, 318 N.C. at 538, 350 S.E.2d at 68.

The Excess Policy contains seven endorsements. Only one endorsement, Number 4, relates to exclusions, which states, "It is further understood that this certificate of reinsurance does not apply to claims to which Exclusion 12 of the Company's Coverage Agreement applies, including but not limited to claims alleging negligent hiring, negligent retention and/or negligent supervision."

The Coverage Agreement and Excess Policy contain conflicting and ambiguous language regarding whether all exclusions contained in the Coverage Agreement equally apply to the Excess Policy. The endorsements to the Excess Policy are silent regarding the Cheerleading Exclusion. The goal of construction of an insurance contract "is to arrive at the intent of the parties when the policy was issued." *Woods v. Nationwide Mutual Ins. Co.*, 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978). The specific incorporation of Exclusion numbered 12 of the Coverage Agreement and failure to include Exclusion numbered 9 shows that the Excess Policy "contains limits, exclusions, provisions, terms and/or conditions which vary from those provided by the [Coverage Agreement]," and did not specifically exclude bodily injuries incurred in connection with cheerleading activities. Our cannons of contract construction hold that "when general terms and specific statements are included in the same contract and there is a conflict, the general terms should give way to the specifics." *Wood-Hopkins Contracting Co. v. North Carolina State Ports Auth.*, 284 N.C. 732, 738, 202 S.E.2d 473, 476 (1974).

Construing ambiguities against the insurer and reviewing exclusions narrowly and in favor of coverage, the trial court correctly denied the Board's motion to dismiss and for summary judgment in part and ruled it had waived its governmental immunity with respect to plaintiffs' claims in excess of $150,000.00, but less than $1,000,000.00. This assignment of error is overruled.

**N.C. STATE BAR v. ROSSABI**

[183 N.C. App. 564 (2007)]

## VII.  Conclusion

The trial court properly ruled the Board had not waived its governmental immunity up to limits contained in the Coverage Agreement. The trial court properly denied in part the Board's motion to dismiss and for summary judgment and ruled the Board had waived its governmental immunity with respect to plaintiffs' claims in excess of $150,000.00, but less than $1,000,000.00.

The provisions of the Coverage Agreement and the Excess Policy are in conflict and ambiguous concerning whether all exclusions, including Exclusion numbered 9, of the Coverage Agreement apply to the Excess Policy. The specific incorporation in the endorsement of Exclusion numbered 12 of the Coverage Agreement and not Exclusion numbered 9 shows that the Excess Policy did not expressly exclude injuries sustained in connection with cheerleading activities.

The parties have stipulated the order contains a ministerial or clerical error of the amount of the limits of the Coverage Agreement. The trial court's order is affirmed and remanded for correction of the NCSBT policy limit from $100,000.00 to $150,000.00.

Affirmed and Remanded for Correction of Clerical Error.

Judges WYNN and CALABRIA concur.