**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 21-1277

---

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

Plaintiff - Appellee,

v.

HEATHER SUTTON, as parent of minor H.S.,

Defendant - Appellant,

and

DAVID LINDSEY, as a parent of minor K.L.; DAPHNE LINDSEY, as parent of minor K.L.; K.L.,

Defendants.

---

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  David Shepardson Cayer, Magistrate Judge.  (3:19-cv-00666-DSC)

---

Submitted:  August 30, 2022                    Decided:  October 19, 2022

---

Before AGEE and HARRIS, Circuit Judges, and MOTZ, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

**ON BRIEF:** Kenneth P. Andresen, KENNETH P. ANDRESEN, PLLC, Englewood, Florida, for Appellant. Christopher J. Blake, Leslie Lane Mize, NELSON MULLINS RILEY & SCARBOROUGH LLP, Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This case involves an insurance dispute arising from a golf-cart accident on a public road in North Carolina. An injured passenger brought a state court negligence action against defendants insured by Liberty Mutual Fire Insurance Company, which in turn filed for declaratory judgment in federal court, seeking to determine the rights and duties of the parties under its homeowner's insurance policy. A magistrate judge held that the accident was excluded under the policy and, accordingly, that Liberty Mutual had no duty to defend the state court action or to indemnify the defendants.

The plaintiff in the state court action now appeals, challenging both the district court's decision to exercise jurisdiction under the Declaratory Judgment Act and the merits decision interpreting the insurance policy. Substantially for the reasons given by the district court and the magistrate judge, we affirm.

## I.

In March 2018, H.S., twelve years old at the time, was riding in the passenger seat of a golf cart driven by K.L., then eleven years old, on a public road in North Carolina. The golf cart belonged to K.L.'s grandparents but was kept at the home of her parents, David and Daphne Lindsey. According to H.S., K.L. caused an accident when she suddenly turned the golf cart to the right and the fender on the passenger side crashed into the ground. H.S.'s jaw was fractured on both sides, and she sustained a severe gash in her scalp.

3

H.S., through her mother, Heather Sutton, filed a negligence action in North Carolina state court against K.L. and her parents (collectively, the Lindseys), seeking damages for her injuries. At the time of the accident, the adult Lindseys held a homeowner's insurance policy issued by Liberty Mutual Fire Insurance Company, and Sutton claimed that the accident was covered by that policy.

Liberty Mutual disagreed, and about a month after Sutton filed the negligence action, it denied coverage. According to Liberty Mutual, the accident fell within a policy exclusion for "motor vehicle liability." That exclusion, Liberty Mutual recognized, contained an exception for golf carts. But the exception applied only to carts owned by the insured and operated on a golf course or in a private residential community, Liberty Mutual reasoned, and neither of those conditions was satisfied here. Liberty Mutual did agree, however, to provide the Lindseys a defense in the state court action, subject to a full and complete reservation of rights.

Liberty Mutual then filed the federal court declaratory judgment action giving rise to this appeal, naming as defendants Sutton and the Lindseys. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, it sought a declaration as to the rights and obligations of the parties in the state court negligence action. Specifically, Liberty Mutual asked the district court to find that under the terms of its policy, it had no duty to defend or indemnify the Lindseys against Sutton's state court claims.

Two separate decisions followed, one regarding the district court's exercise of jurisdiction under the Declaratory Judgment Act and one resolving the parties' coverage dispute. We review each below.

4

## A.

First, Sutton and the Lindseys filed motions to dismiss Liberty Mutual's action, arguing that the district court should leave matters to the state court and decline to exercise its discretionary jurisdiction under the Declaratory Judgment Act. *See* 28 U.S.C. § 2201; *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (describing Act as "confer[ring] a discretion on the courts rather than an absolute right upon the litigant" (internal quotation marks omitted)). The district court denied the motions, finding it appropriate to exercise its jurisdiction to decide Liberty Mutual's action. *Liberty Mutual Fire Ins. Co. v. Lindsey*, No. 3:19-CV-00666-GCM, 2020 WL 5821978 (W.D.N.C. Sept. 30, 2020) ("*Liberty Mutual I*").

The court began its analysis with the two "princip[al] criteria" established by this court: whether a declaratory judgment would "serve a useful purpose in clarifying and settling the legal relations in issue," and whether it would "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding," *id.* at *2 (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)). Those criteria, the district court found, "clearly favor[ed] rendering a declaratory judgment," which would "settl[e] the question" of whether Liberty Mutual was required to defend the Lindseys and thus "promptly provide all parties with relief" from the uncertainty and insecurity of "not knowing" whether the Lindseys would be provided coverage. *Id.*

Recognizing that a federal court "should carefully consider whether it is interfering with a state court action" if a parallel state suit is pending, *id.* at *1, the court went on to consider the so-called "*Nautilus* factors," which guide that inquiry. *See United Capitol Ins.*

5

*Co. v. Kapiloff*, 155 F.3d 488, 493–94 (4th Cir. 1998) (citing *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376–77 (4th Cir. 1994), *abrogated in part on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)). Those factors, too, the court concluded, favored the exercise of federal jurisdiction. *Id.* at *2. No complicated or unsettled issues of state law were presented, the court reasoned, and there was no "strong state court interest" in deciding the coverage issue. *Id.* Indeed, it would be inefficient to dismiss the case from federal court and require Liberty Mutual – not a party to the underlying negligence action – to file a separate state court lawsuit to resolve the coverage dispute. *Id.* Nor was there any concern about "unnecessary entanglement" between the state and federal actions, given their distinct subject matters – a state action for negligence, and a federal action pertaining only to insurance coverage. *Id.* And finally, there was no indication that Liberty Mutual was engaged in "procedural fencing" or forum shopping; instead, Liberty Mutual "has simply chosen to file this case in federal court, as it is authorized to do" under the Declaratory Judgment Act. *Id.*

**B.**

With federal jurisdiction established, Liberty Mutual filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that the plain language of its policy barred coverage for the injuries at issue in the state court negligence action. Sutton opposed the motion and filed her own motion for summary judgment, asserting that

coverage was *not* excluded under the policy.  The parties consented to referral of the case to a magistrate judge.[1]

The magistrate judge granted Liberty Mutual's motion for judgment on the pleadings and denied Sutton's motion for summary judgment.  *Liberty Mutual Fire Ins. Co. v. Lindsey*, No. 3:19-CV-006666-DSC, 2021 WL 510624, at *5 (W.D.N.C. Feb. 11, 2021) ("*Liberty Mutual II*").  Applying North Carolina rules of contract interpretation, the magistrate judge agreed with Liberty Mutual that the golf-cart accident was excluded from coverage under the policy.  That question, the magistrate judge explained, was governed by the policy provision excepting certain golf carts – those owned by the insured and operated on a golf course or in a private community – from the general exclusion for "motor vehicle liability."  But no coverage existed under that exception, the magistrate judge concluded, because the golf cart at issue was owned by K.L.'s grandparents, not the insureds, and was being driven on a public road at the time of the accident.  *Id.* at *4.

The magistrate judge rejected Sutton's argument that coverage nevertheless was preserved under a different exception, for vehicles "designed for recreational use."  Here, the magistrate judge relied on the "well-settled principle" of North Carolina contract law "applying specific provisions over more general ones dealing with the same subject

---

[1] The "district court may refer a case to a magistrate judge if all parties consent." *Muhammad v. Fleming*, 29 F.4th 161, 162 (4th Cir. 2022).  In that event, the magistrate judge "conduct[s] any or all proceedings in a jury or nonjury civil matter and order[s] the entry of judgment in the case."  28 U.S.C. § 636(c)(1); *see* Fed. R. Civ. P. 73.  In this case, after the district court entered its order denying the motion to dismiss, the parties consented to a magistrate judge handling the remaining proceedings.  Hence our need to refer to decisions of both the district court and the magistrate judge throughout this opinion.

7

matter." *Id.* at \*4 (citing *Lail v. Cleveland Cty. Bd. of Educ.*, 645 S.E.2d 180, 187 (N.C. Ct. App. 2007)).  Recreational vehicles and golf carts, the magistrate judge observed, "are treated differently" under the policy:  "Had the insurer intended for a golf cart to be treated as a recreational vehicle, the drafters of the policy would not have included a separate exclusion for golf carts.  But they did."  *Id*.  That more specific exception for golf carts alone, the district court concluded, must apply over the more general exception for all recreational vehicles where, as here, the two would lead to conflicting results.  *Id.*  And that was so even construing the policy language in favor of coverage, consistent with North Carolina law.  *Id.* at \*4 ("Even construing the [exception] 'strictly to provide coverage,' coverage does not exist." (quoting *Lail*, 645 S.E.2d at 186)).

Because the accident was not covered under the Lindseys' homeowner's insurance policy, the magistrate judge held, Liberty Mutual had neither a duty to defend nor a duty to indemnify.  Accordingly, the magistrate judge granted Liberty Mutual's motion for judgment on the pleadings and, for the same reasons, denied Sutton's motion for summary judgment.  *Id.* at \*4–5.

Sutton timely appealed the entry of final judgment in Liberty Mutual's declaratory judgment action.

## II.

### A.

We must begin by addressing two jurisdictional issues raised by Sutton for the first time on appeal.  *See United States v. Poole*, 531 F.3d 263, 270 (4th Cir. 2008) (describing

8

independent obligation of federal appellate courts to satisfy themselves of district court jurisdiction). We may dispense briefly with Sutton's first claim: that the district court lacked subject matter jurisdiction because Liberty Mutual did not meet its burden of establishing complete diversity. *See* 28 U.S.C. § 1332; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). We disagree.

As we have explained, there are two ways in which a defendant like Sutton may challenge subject matter jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). A defendant may mount a "facial challenge," arguing that the facts alleged in a complaint are not a basis for jurisdiction. *Id.* Or a defendant may contend that the jurisdictional allegations in a complaint are not true. *Id.* But Sutton has done neither here. There is no dispute that Liberty Mutual adequately *alleged* complete diversity, identifying itself as a corporation organized under the laws of Wisconsin with its principal place of business in Massachusetts, *see* 28 U.S.C. § 1332(c)(1) (defining corporate citizenship for purposes of diversity jurisdiction), and all defendants as citizens and residents of North Carolina. And Sutton has never contested the *truthfulness* of those allegations, denying them solely on the basis that she was "without sufficient information" as to Liberty Mutual's corporate citizenship. J.A. 113.

So Sutton has brought neither of the challenges we recognized in *Kerns*. Instead, she argues that Liberty Mutual failed to submit a "verified pleading" or other "verified documentation" demonstrating that its principal place of business is in Massachusetts. But there is no statute, rule, or case that requires such verified support for well-pleaded factual allegations establishing subject matter jurisdiction. *Cf. Kerns*, 585 F.3d at 192–93

9

(describing fact-finding process by which district court may resolve a challenge to the truthfulness of jurisdictional allegations). And the background principle of the Federal Rules of Civil Procedure is that "[u]nless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit." Fed. R. Civ. P. 11(a). Sutton's argument is therefore without merit, and Liberty Mutual's well-pleaded allegations suffice to establish jurisdiction.

We also disagree with Sutton's second threshold contention: that under *Trustgard Insurance Co. v. Collins*, 942 F.3d 195 (4th Cir. 2019), this case does not present an actual controversy and was not ripe for adjudication by the district court. In *Trustgard*, this court questioned – without resolving – whether a federal court has jurisdiction to issue a declaratory judgment as to an insurer's duty to indemnify before a state court renders a judgment on the insured's liability. *Id.* at 200. That is because, we reasoned, prior to judgment, an insurer's "alleged injury – that it might have to guarantee a future judgment . . . – is of a hypothetical and contingent nature: the injury may or may not occur depending on the outcome of the state lawsuit." *Id.* It follows, Sutton argues, that Liberty Mutual's request for a declaration as to its duty to indemnify is not ripe, because there has been no state court judgment on liability. Nor, she argues, is the duty-to-defend issue ripe for adjudication, because Liberty Mutual has not shown that it has begun to provide a defense and incurred expenses in doing so.

Sutton misreads *Trustgard*. *Trustgard*'s discussion of ripeness bears only on duty-to-indemnify claims; duty-to-defend claims are expressly distinguished. *See id.* at 200. And under *Trustgard*'s reasoning, once a state court case is filed and an insured claims a

10

defense, that claim – the duty-to-defend claim – becomes a concrete question, ripe for resolution by a federal court. *See id.* Here, the Lindseys had already claimed a defense from Liberty Mutual when Liberty Mutual filed its declaratory judgment action in federal court, arguing against a duty to defend. That is enough to make the duty-to-defend claim ripe. And under North Carolina law, where there is no duty to defend, there can also be no duty to indemnify. *N.C. Farm Bureau Mut. Ins. Co., Inc. v. Phillips*, 805 S.E.2d 362, 365–66 (N.C. Ct. App. 2017) (citing *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 692 S.E.2d 605 (N.C. 2010)). Here, in other words, Liberty Mutual's duty-to-indemnify claim ripens along with its duty-to-defend claim, and its request for a declaratory judgment as to both presents a concrete question for the district court's resolution.

## B.

That brings us, finally, to the two decisions on appeal. We review the district court's decision to hear Liberty Mutual's federal declaratory judgment action for abuse of discretion. *See Penn-Am. Ins. Co.*, 368 F.3d at 412. The magistrate judge's merits ruling, granting judgment on the pleadings to Liberty Mutual, is reviewed de novo. *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019).[2] On appeal, the parties advance substantially the same arguments they presented to the district court and magistrate judge. And for substantially the same reasons given by the district court and

---

[2] Sutton also summarily asserts that the magistrate judge erred in denying her summary judgment motion. Because the grant of judgment to Liberty Mutual was predicated on the same conclusion as the denial of summary judgment to Sutton – that coverage of the golf-cart accident was excluded under the homeowner's insurance policy – we address only the first here.

11

magistrate judge, we affirm the exercise of jurisdiction over this action and entry of judgment in favor of Liberty Mutual.

1.

We begin with the district court's decision to exercise jurisdiction over Liberty Mutual's request for declaratory relief while the state court negligence action was pending. Under the Declaratory Judgment Act, in a case or controversy otherwise within its jurisdiction,[3] a district court "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (emphasis added); *see Penn-Am. Ins. Co.*, 368 F.3d at 412. As the district court recognized, *Liberty Mutual I*, 2020 WL 5821978, at *2, in deciding whether "to exercise authority to proceed with a declaratory judgment action," courts are to consider whether the judgment would serve a useful clarifying purpose in settling contested legal relations and afford relief from uncertainty and insecurity. *Kapiloff*, 155 F.3d at 493 (citing *Quarles*, 92 F.2d at 325). And when a parallel case is pending in state court, courts analyze additional factors animated by "considerations of federalism, efficiency, and comity." *Id.* at 493–94 (citing *Nautilus*, 15 F.3d at 376–77); *see Liberty Mutual I*, 2020 WL 5821978, at *2 (listing and applying "*Nautilus* factors").

We can discern no abuse of discretion in the district court's careful weighing of the relevant considerations here. It is well established that a "declaration of parties' rights

---

[3] As discussed above, Liberty Mutual properly invoked the district court's jurisdiction pursuant to 28 U.S.C. § 1332. *See Liberty Mutual I*, 2020 WL 5821978, at *2.

under an insurance policy is an appropriate use of the declaratory judgment mechanism" because it can "afford relief from the uncertainty of whether coverage exists under the policy." *Kapiloff*, 155 F.3d at 494 (internal quotation marks omitted). That general principle is fully applicable in this case, as the district court explained: A declaratory judgment could provide the Lindseys – already defendants in a state court negligence action – with "relief from the uncertainty[ and] insecurity[] . . . of not knowing" whether Liberty Mutual would be required to pay for their defense and indemnify any judgment against them. *Liberty Mutual I*, 2020 WL 5821978, at *2.

And while it is true, as the district court noted, that a federal court must "carefully consider whether it is interfering with a state court action" before it exercises jurisdiction, *id.* at *1, the district court made just such a "careful[]" examination of the *Nautilus* factors here. As the district court explained, if it declined to exercise jurisdiction over this action, Liberty Mutual's claims would not be resolved in the pending state court action, which involves only negligence issues and to which Liberty Mutual is not a party. Instead, Liberty Mutual would have to "file a separate state court lawsuit to resolve the present dispute," making state court resolution the less efficient alternative. *Id.* at *2. For similar reasons, there is no risk that "overlapping issues of fact or law" will entangle the state court hearing Sutton's negligence claim and the federal court resolving a separate coverage dispute. *Id.* And we agree with the district court that there is no indication here of any "procedural fencing" on Liberty Mutual's part, or a particularized state interest in having this coverage dispute resolved in state court. *Id.* In short, the district court, having engaged in precisely the inquiry required by our case law, was well within its broad discretion, *see Med. Mut.*

13

*Ins. Co. of N.C. v. Littaua*, 35 F.4th 205, 208 (4th Cir. 2022), when it determined that it would be appropriate to exercise jurisdiction over Liberty Mutual's declaratory judgment action.

2.

Finally, we consider the magistrate judge's merits decision in favor of Liberty Mutual. As the magistrate judge explained, in reviewing a Rule 12(c) motion for judgment on the pleadings, a court must view the facts presented in the light most favorable to the nonmoving party and determine whether the case can be decided as a matter of law. *Liberty Mutual II*, 2021 WL 510624, at *2; *see Beach Mart*, 932 F.3d at 274. There is no dispute that the law of North Carolina – as the place where the insurance policy was delivered – applies to the coverage dispute here. *Liberty Mutual II*, 2021 WL 10624, at *2. And under North Carolina law, both Liberty Mutual's duty to defend and its duty to indemnify turn on whether the golf-cart accident is covered under the Lindseys' homeowner's insurance policy; an insurer has no duty to defend where the alleged injury is not covered by the policy, and when there is no duty to defend, there also is no duty to indemnify. *Id.*

The critical question in this case, as the magistrate judge recognized, is whether the golf-cart accident is governed by the golf-cart exception to the policy's "motor vehicle liability" exclusion. *See id.* at *4. The Lindseys' homeowner's insurance policy excludes coverage for claims arising from "motor vehicle liability" unless, as relevant here, the "motor vehicle" is either (a) a "motorized golf cart that is owned by an 'insured'" and, among other conditions, "at the time of an 'occurrence,'" within the legal boundaries of a "golfing facility" or a "private residential community," or (b) "[d]esigned for recreational

14

use off public roads" and "[n]ot owned by an insured." J.A. 40. If the golf-cart exception applies, as the magistrate judge explained, then there plainly is no coverage under the terms of that exception: The golf cart is owned by K.L.'s grandparents, not the insured Lindseys; and at the time of the accident, it was on a public road, not on a golf course or in a private residential community. But if, as Sutton argues, the "recreational vehicle" exception applies, then there would be coverage, because the cart was *not* owned by the Lindseys.

We agree with the magistrate judge that the golf-cart exception controls. Like the magistrate judge, we recognize that under North Carolina law, insurance policy exclusions are to be construed in favor of coverage and against the insurer. *See id*. at \*4; *Lail*, 645 S.E.2d at 186. But North Carolina also follows the specific-over-the-general canon of contract construction, under which the more specific provision governs over the more general in case of conflict. *See Liberty Mutual II*, 2021 WL 10624, at \*4; *Wood-Hopkins Contracting Co. v. N.C. State Ports Auth.*, 202 S.E.2d 473, 476 (N.C. 1974) ("[W]hen general terms and specific statements are included in the same contract and there is a conflict, the general terms should give way to the specifics."). And that rule, applied to this policy language, leaves no ambiguity: The golf-cart accident is governed by the golf-cart exception, and not by a broader exception covering *all* recreational vehicles. As the magistrate judge observed, had the insurer intended golf carts to be treated as recreational vehicles, it "would not have included a separate exclusion for golf carts. But [it] did." *Liberty Mutual II*, 2021 WL 10624, at \*4. As a result, that specific exception governs the golf-cart accident in question and, on the undisputed facts of this case, operates to preclude coverage.

15

## III.

For the reasons given above, the judgment of the district court is affirmed.

*AFFIRMED*